# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SHAW,<br><br>　　　　　　　　　　Plaintiff,<br>　vs.<br><br>CREDIT COLLECTION SERVICES,<br><br>　　　　　　　　　　Defendant. | CASE NO. 09CV0883-LAB (CAB)<br><br>**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |

  Shaw accepted a Rule 68 offer of judgment for $2,001.00 plus reasonable attorneys' fees on or about July 15, 2009. This judgment was entered on July 24, 2009. Now pending before the Court is Shaw's motion for attorneys' fees, which the parties have not been able to compromise on. Shaw wants $12,572.44[1]; Credit Collection Services ("CCS") believes $2,000 is fair.

  Shaw and CCS agree that Shaw is entitled to a "lodestar" amount that is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). They disagree on three things: (1) whether Shaw can recover attorneys' fees beyond the date of the offer of judgment (that is, attorneys'

---

[1] Shaw moved for $8,989.19 in his opening brief and $12,572.44 in his reply brief. Presumably, this means he is claiming costs and attorneys' fees of $3,583.25 for his reply brief alone.

fees for bringing and arguing the present motion); (2) whether the number of hours Shaw's lawyers claim to have spent on this case is reasonable; and (3) whether Shaw's lawyers' rates are reasonable.

**1.     Fees on Fees**

As a general rule, the time attorneys spend seeking fees is compensable, and can be incorporated into a final attorneys' fees award. *Comacho v. Bridgeport Financial, Inc.*, 523 F.3d 973 (9th Cir. 2008). But there was an offer of judgment in this case, dated July 7, 2009, that allowed Shaw "his reasonable attorneys' fees and costs incurred *to date*, to be mutually agreed upon by the parties, or if no agreement can be reached, to be determined by the Court in accordance with 15 U.S.C. § 1692k." (Dkt. No. 8 (emphasis added).) The judgment subsequently entered confirmed this, awarding Shaw "his reasonable attorneys' fees and costs incurred through July 7, 2009 . . . ." (Dkt. No. 11.)

*Guerrero v. Cummings*, 70 F.3d 1111 (9th Cir. 1995), would appear to control here. In that case, an offer of judgment allowed the plaintiff $1,500 "plus reasonable attorney fees and costs incurred . . . prior to the date of this offer in an amount to be set by the court." *Id*. at 1113. The plaintiff's attorney then sought to recover fees for preparing his bill, and the district court denied the request. The Ninth Circuit affirmed. The language of the offer of judgment, the Ninth Circuit held, was unambiguous, and it limited recoverable attorneys' fees to those accrued prior to the date of the offer. *Id*. at 1113.

Ostensibly, the same conclusion is warranted in this case. The offer of judgment Shaw accepted plainly allowed him "reasonable attorneys' fees and costs incurred to date," that date being July 7, 2009.[2]    Shaw claims there is an ambiguity, however: The "to date" language can be read to limit only a fees award that the parties mutually agree upon; if no agreement is reached, and the Court has to determine an award in accordance with 15 U.S.C. 1692k, Shaw is entitled to his fees and costs for the entire action, which includes filing and arguing a motion for fees. The question, in other words, is whether "to date" modifies

---

[2] Shaw maintains the offer of judgment wasn't received until July 15, 2009. That's possible, but the Court doesn't see the relevance here. The issue does become relevant below, however.

"to be mutually agreed upon by the parties" *and* its alternative, "to be determined by the Court," or whether it modifies only the former.

The Court rejects Shaw's argument, for four reasons. First, the construction of the offer of judgment that Shaw proposes would incentivize him (or his lawyers) to negotiate a fees award in bad faith, knowing more work will come (and with it, a greater award) if the parties can't agree on one and have to involve the Court. Second, it is highly unlikely that CCS would willingly subject itself to a larger fee award in the event that it could not mutually agree upon one with Shaw. Third, mutually agreeing on a fees amount takes the work of lawyers, too, and it's counterintuitive that CCS would be unwilling to compensate Shaw's lawyers for their time negotiating an award but absolutely willing to compensate his lawyers for moving for one.

Fourth, and most important, the Court simply finds Shaw's reading of the offer of judgment to be extremely strained and ends-driven. The point of an offer of judgment is to save the offeror costs going forward, and the "to date" language is prominent in the offer CCS made. Shaw argues that "15 U.S.C. § 1692k provides that all Plaintiff's reasonable attorneys' fees and costs are to be paid by Defendant *for the entire action*," but that is misleading. (Reply Br. 3.) The word "entire" appears nowhere in the text of the statute; in fact, the relevant subdivision, § 1692k(a)(3), merely authorizes courts to determine "a reasonable attorney's fee" in Fair Debt Collection Practices Act cases. That language doesn't eviscerate the relevance of an offer of judgment that cuts the attorneys' fees off at the offer of judgment.[3] Thus, Shaw's fees are cut off at the offer of judgment.

---

[3] The Court also notes that it is common for an offer of judgment to not even suggest that the parties negotiate attorneys' fees themselves and instead stipulate to a court's subsequent determination. This cuts against Shaw's argument insofar as it suggests that fees for seeking fees aren't a given even when additional legal work must be performed to obtain fees following the acceptance of an offer of judgment. *See, for example, Harper v. Phillips & Cohen Assoc.'s, Ltd.*, No. 08-CV1500, 2009 WL 3059113 at *1 (D. Colo. Sept. 21, 2009) (offer of judgment included "reasonable attorneys' fees to date in an amount to be determined by the Court"); *Croy v. E. Hall & Assoc.'s, P.L.L.C.*, No. 06-CV-107, 2007 WL 676698 at *1 (W.D.Va. Mar. 2, 2007) (offer of judgment included attorneys' fees "accrued to date and as determined by the Court"); and *Liles v. Am. Corrective Counseling Serv.'s*, 201 F.R.D. 452, 454 (S.D. Iowa 2001) (offer of judgment included "all reasonable costs and attorneys' fees incurred to date . . . as may be shown in hearing before the court").

**2.     Cut-Off Date**

Taking the parties at their word, the offer of judgment was sent on July 7, 2009 and received on July 15, 2009.[4] Shaw's lawyers billed a decent number of hours between these dates, having nothing to do with their motion for fees, and the Court must also determine whether they are compensable. The question, in other words, is whether, under the offer of judgment, attorneys' fees and costs stopped accruing on the day the offer was dated and sent, or on the day it was received and accepted.

Offers of judgment under Rule 68 are analogous to contract offers, and rules of contract construction are used to interpret them. *Holland v. Roeser*, 37 F.3d 501, 504 (9th Cir. 1994). In *Holland*, the defendant's Rule 68 offer used the words "costs now accrued and reasonable attorney fees as determined by the court," and the Ninth Circuit held that "costs now accrued" clearly waived post-offer costs while "reasonable attorney fees" was ambiguous and didn't limit post-offer fees. This is consistent with the principle that ambiguities must be construed "against the offeror as the drafting party." *Herrington v. County of Sonoma*, 12 F.3d 901, 907 (9th Cir. 1993). But there are no such ambiguities in CCS's offer, which awards Shaw "his reasonable attorneys' fees and costs incurred to date." The only conceivable date that the words "to date" could reference is the date written on the offer: July 7, 2009. *See generally Robins v. Scholastic Book Fairs*, 928 F.Supp. 1027, 1030-31 (D. Oregon 1996) (phrase "accrued costs and attorney's fees" did not waive post-offer fees).

Morever, as CCS observes, the judgment entered in this case by the Clerk, to which Shaw made no objection, clearly states that "plaintiff is awarded his reasonable attorneys' fees and costs incurred through July 7, 2009, to be mutually agreed upon by the parties, or, if no agreement can be reached, to be determined by the Court in accordance with 15 U.S.C. § 1692k." (Dkt. No. 12.) This judgment unambiguously sets the cut-off date for fees and

---

[4] The Court is aware that Shaw disputes CCS's representation that it sent the offer of judgment on July 7, 2009. (Reply Br. 2 ("The circumstances indicate that defendant's counsel filed its Answer and placed the Rule 68 Offer in the mail on the same day, July 14, 2009.").) However, CCS does more than *allege* it sent the offer of judgment on July 7; the offer is *dated* July 7 and the accompanying proof of service is dated July 7.

costs in this case at July 7, 2009. The Court will use this date to determine a preliminary, working fees and costs award.

CCS says the "sum of $4,523.43 is the *starting point*" for the Court's analysis. The Court has done the math and agrees, as the following table shows.

| Attorney | Hours | Rate | Total |
| --- | --- | --- | --- |
| Amir Vafaei | 16 | $225 | $3,600 |
| Josh Swigart | 0 | $355 | $0 |
| Robert Hyde | .8 | $355 | $284 |
| Sara Khosarobadi | .2 | $125 | $25 |
| **Total** | 17 |  | **$3,909** |

Costs through July 7, 2009 totaled $614.43, and attorneys' fees and costs together total to $4,523.43.

### 3.   **Hours Reasonably Expended**

CCS asks the Court to slash the number of hours that Shaw's lawyers can reasonably claim to have spent on this case, based on the argument that it was initiated with a stock complaint, wasn't complex, and required virtually no litigation. CCS's own counsel submitted a declaration suggesting that it shouldn't have taken Shaw's lawyers more than 5-7 hours "to open the file and prepare and file a complaint on behalf of . . . Shaw." (Ellis Decl. ¶ 15.) There are no specific entries on the fees report submitted by Shaw that CCS objects to; it just seeks an across-the-board reduction.

Frankly, the Court shares CCS's skepticism that Shaw's lawyers reasonably devoted 17 hours to this case before July 7, 2009. The bulk of these hours – 13.5 of them – were logged by Amir Vafaei between his initial meeting with Shaw on March 2, 2009 and the drafting of the complaint on April 8, 2009. This seems excessive. The practice of Hyde & Swigart "is almost exclusively devoted to the litigation of both Federal and California State Debt Collection Practices Act matters . . . ." (Mem. in Supp. of Mot. for Fees 8.) The firm

has litigated 600 cases in the past six years, which amounts to a new case roughly every 3 or 4 days. (*Id.*) The attorneys are specialized. (*Id.*) In fact, their "experience, reputation and ability in this area is second to none." (Reply Br. 6.) The complaint they filed in this case was obviously not drafted from scratch; it's no secret that consumer rights law firms file a lot of lawsuits and are able to reuse large portions of pleadings from one case to the next. This is all to say that Hyde & Swigart know what they are doing, and can reasonably be expected to be highly efficient in bringing cases under the FDCPA and RFDCPA.

Rather than point to specifics of this case that would explain the hours allegedly devoted to it, Shaw simply makes vague assertions about how intricate and demanding FDCPA cases can be:

> Because the FDCPA and California's Rosenthal Act are so specific in nature with highly detailed language influenced by decades of case law that number many hundreds of cases, reviewing, analyzing, and making determinations as to violations is a considerable task that must be fine tuned to every unique situation . . . Fact finding, interviewing, analysis, and legal research as to particular and unique issues that always come up in consumer related issues takes time . . . Consumer cases take a great deal of time due to the novel issues involved, and the different determinations that must be made as to how certain technical facts apply to the many technicalities of these statutes.
>
> (Reply Br. 6.)

This is saying a lot, but it's not saying anything about Shaw's case in particular. The Court does not intend to belittle Hyde & Swigart's practice, but very little about this case suggests it is a head-scratcher. The facts section of the complaint simply lists a series of attempts by CCS to collect an alleged debt from Shaw (Compl. ¶¶ 28, 33, 37, 40, 47, 50), and after describing each attempt the complaint recites boilerplate language alleging a violation of the FDCPA and RFDCPA. The causes of action are lifted verbatim from complaints Hyde & Swigart has filed in other cases. There don't appear to be any factual or legal questions that are even potentially vexing.

As the Court breaks down the time Amir Vafaei spent on this case in the beginning, 3.8 hours were devoted to discussions with Shaw and factual development, while 9.4 were devoted to researching and drafting the complaint. Considering the ostensibly routine nature of this case, the lack of an explanation from Shaw as to why it's *not* routine, and the fact that

the complaint is overwhelmingly unoriginal, these hour totals should be reduced.  The Court believes three hours was plenty to download from Shaw all of the information related to this case and assess its merits, and another two hours was more than sufficient to incorporate the facts into a complaint template that Hyde & Swigart obviously has at the ready.  That comes to **5 hours**  for Amir Vafaei through April 8, 2009.  The Court approves **.7 hours** for client and opposing counsel correspondences between April 17, 2009 and June 30, 2009, which is not a reduction of the fees reported by Amir Vafaei.  Finally, between July 1, 2009 and July 6, 2009, Amir Vafaei billed 1.8 hours.  One hour of this time is attributed to the preparation of an ENE brief, but Judge Bencivengo didn't order an ENE until July 15, 2009 and it was calendared for August 25, 2009.  This hour of time billed is suspect, and the Court strikes it, leaving Amir Vafaei with **.8 hours** billed between July 1, 2009 and July 7, 2009.  This takes Amir Vafaei's total hours in this case to **6.5 hours**.

Robert Hyde billed .8 hours during the relevant time period, but .5 hours are attributed to "Recorded voice mail."  Those are stricken.  Mr. Hyde's total hours billed is therefore **.3 hours**.  CCS objected to Sara Khosarobadi billing any hours in this case because she is identified as an office manager in Hyde & Swigart's fees report.  Shaw did not respond to that objection, and the Court agrees with it anyway.  Her time billed is stricken.  Thus, Shaw is entitled to recover 6.8 hours worth of attorneys' fees, **6.5 for Amir Vafaei** and **.3 for Robert Hyde**.

**4.      Hyde & Swigart's Reasonable Rate**

CCS believes Hyde and Swigart attorneys bill more than they are worth.  They would reduce Amir Vafaei's rate of $225 per hour to $195, and Robert Hyde's rate of $355 per hour to $210.  As Shaw shows, however, Vafaei's and Hyde's rates have been approved as reasonable by this Court in a variety of cases, and there is no good cause to deviate here.  For what it is worth, the Court has cut Hyde & Swigart's compensable time to such a degree that an accompanying rate reduction will not meaningfully lower their fees award.

//

//

**5.     Conclusion**

The Court approves 6.5 hours for Amir Vafaei at $225 per hour and .3 hours for Robert Hyde at $355 per hour, for a total of **$1,569.00.**  The Court also approves all costs requested through July 7, 2009, which sum to **$614.43.**  Hyde & Swigart's total award in this case is therefore **$2,183.43**.

**IT IS SO ORDERED**.

DATED: December 11, 2009

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge